**IN THE COURT OF APPEALS OF IOWA**

No. 23-1336
Filed April 10, 2024

**IN THE MATTER OF R.B.,**
**Alleged to Be Seriously Mentally Impaired,**

**R.B.,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, Bethany Currie,

Judge.

        R.B. appeals the district court's order finding him to be seriously mentally

impaired and determining his placement. **AFFIRMED.**

        Laura A. Eilers of Peglow, O'Hare, See & Eilers, P.L.C., Marshalltown, for

appellant.

        Brenna Bird, Attorney General, and Sarah Jennings, Assistant Attorney

General, for appellee State.

        Considered by Ahlers, P.J., Buller, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**GAMBLE, Senior Judge.**

In July 2009, R.B. was found to be seriously mentally impaired, a determination that has been confirmed regularly by evaluating psychiatrists. R.B. is currently in residential care at the Iowa Veterans Home in Marshalltown. R.B. appeals a district court order affirming he is seriously mentally impaired and his placement. He challenges whether he continues to be seriously mentally impaired and his current placement as the least-restrictive placement. "We review challenges to the sufficiency of the evidence in involuntary commitment proceedings for errors at law." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). "The elements required for an involuntary commitment must be established by clear and convincing evidence," and we are bound by the district court's fact findings "if supported by substantial evidence." *In re V.H.*, 996 N.W.2d 530, 536 (Iowa 2023) (citation omitted).

R.B. has appealed his commitment twice before. In 2014, he appealed his placement at the Iowa Veterans Home; the district court and this court affirmed the finding of continuing serious mental impairment and the placement. *In re R.B.*, No. 15-0823, 2015 WL 6507836, at *1 (Iowa Ct. App. Oct. 28, 2015) (noting R.B.'s condition was not improving at that time). Just over four years later, R.B. petitioned for a writ of habeas corpus, which the district court and then this court denied. *In re R.B.*, No. 19-2044, 2020 WL 7021787, at *2 (Iowa Ct. App. Nov. 30, 2020). In that case, while we recognized some evidence in R.B.'s favor regarding whether he posed a danger to himself, substantial evidence in the form of an overt act of his drinking eleven beers in thirty minutes and a history of not attending follow-up

mental-health appointments supported the district court's conclusion R.B. was likely to injure himself or others if released from commitment.  *Id.* at *1-2.

**A. Seriously Mentally Impaired.**

Iowa Code section 229.1(22) (2023) defines "seriously mentally impaired" as

> the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
>     a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
>     b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
>     c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.
>     d. Has a history of lack of compliance with treatment and any of the following applies:
>         (1) Lack of compliance has been a significant factor in the need for emergency hospitalization.
>         (2) Lack of compliance has resulted in one or more acts causing serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

Our courts have broken this down into three elements: (1) a mental illness, (2) judgment impairment as to treatment, and (3) a danger posed to self or others. *See V.H.*, 996 N.W.2d at 543.  The danger posed is predictive in nature but must "be evidenced by a recent overt act, attempt, or threat."  *Id.* (cleaned up).  R.B. only argues the danger element was not proven by clear and convincing evidence, he does not challenge the other elements.

R.B. has been diagnosed with several mental-health issues—including schizophrenia, anxiety, a neurocognitive disorder following a 2010 traumatic brain

injury, and others. He takes prescription medications to manage his symptoms. R.B.'s medications are managed by a nurse practitioner in the Veterans Home, and the Veterans Affairs (VA) psychiatrist reviews his records regularly. R.B. has refused treatment with the VA's psychiatrist since 2019 after the doctor continued to recommend treatment at the Veterans Home instead of independent living. R.B. stated the psychiatrist "gets me more depressed," so he doesn't bother talking to him.

R.B. testified on his own behalf. Although he was unaware of the doses of his medication, he stated he would comply with his medication to get out of the facility. He appeared to believe his past alcohol abuse was the primary reason for his placement at the Veterans Home. When questioned about his plans outside, he mentioned fishing, hunting, and seeing his siblings. He agreed with one of his prior statements that he would like to get an RV and travel across the country.[1] Even without the RV, R.B. planned to travel and see the country and visit family and friends. He talked about writing letters to celebrities he is convinced are his children and claimed to have "over ten" children.[2]

In July 2022, R.B. was evaluated by an independent psychiatrist in regards to his continued commitment at the Veterans Home. He told the independent psychiatrist he didn't need his medications because he doesn't have a mental

---

[1] At a prior hearing, R.B. admitted his drivers license had lapsed and he had not renewed it because he is not allowed a car at the Veterans Home. Nothing in the record indicates he has since gotten his license back.

[2] At an earlier hearing, the VA psychiatrist attributed these beliefs to R.B. having "residual effects from schizophrenia" despite the general effectiveness of his treatment. R.B.'s paranoia and delusions worsened for a time, leading to an increase in medication dosage in 2018. His dose has been stable since then.

illness. The evaluating psychiatrist recommended R.B. remain at the Veterans Home as the least restrictive placement, noting his need for structure and opining R.B. would not comply with his medication without supervision and likely injure himself or others.

The VA psychiatrist testified, emphasizing the importance of a structured environment and supervision for R.B.'s continued sobriety and medication management. He opined if on his own, R.B. was likely to start using alcohol again, which combined with his cognitive impairment would result in a failure to take medication as prescribed, leaving him at risk for severe and unmanageable delusions and hallucinations. Further, without adequate supervision, the psychiatrist doubted R.B. would be able to adequately satisfy his needs for nourishment, shelter, and medical care. The psychiatrist noted R.B., who was seventy years old at the hearing, is entering an age group where dementia is more common, and he is at a much higher risk due to past traumatic brain injury and past alcohol abuse.

R.B. argues the evidence fails to establish a recent overt act, attempt, or threat sufficient to justify placement at the Veterans Home. *See V.H.*, 996 N.W.2d at 543 (requiring "a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger" (citation omitted)). Past instances of overt acts include that in 2014, he became intoxicated, threw away his medication, fell, and injured himself. In 2017, R.B. had an altercation with a peer at the Veterans Home. In 2019, he drank eleven beers in thirty minutes when briefly unsupervised while visiting family. There have been no more recent incidents because R.B. has been stable, consistently medicated, and

monitored for alcohol use while under the care of the providers at the Veterans Home. R.B.'s past performance is predictive of what is likely to occur if R.B is released to a less restrictive environment, either living on his own or with someone who has not demonstrated an ability to provide the care and supervision he needs. R.B.'s lack of insight into his condition—particularly not believing he has any mental illness requiring medication and a demonstrated inability to distinguish between his delusions and reality even when medicated—makes it likely that he would injure himself or others in the future if allowed to remain at liberty without treatment. *See id.* We further observe that his plan for living outside the Veterans Home is entirely dependent on a friend who has not affirmed to anyone else she is willing and able to help R.B. meet his needs for "nourishment, clothing, essential medical care, or shelter" in a manner that does not put him or any other person at risk of harm. *See* Iowa Code § 229.1(22)(c); *In re C.B.*, No. 22-2089, 2023 WL 3092076, at *3 (Iowa Ct. App. Apr. 26, 2023) (discussing an expressed reluctance to take medication and reliance on another for food, shelter, and medical compliance as recent overt acts).

Based on this record, we find R.B. does have a mental illness. *See* Iowa Code § 229.1(22); *V.H.*, 996 N.W.2d at 543. As he denies having a mental illness, he lacks "sufficient judgment to make responsible decisions with respect to" his treatment. *See* Iowa Code § 229.1(22); *V.H.*, 996 N.W.2d at 543. And substantial evidence supports the district court's finding that without adequate medication management, "[h]e would likely inflict physical injury on himself or others if placed in a less restrictive environment."

**B. Least Restrictive Placement.**

R.B. also requests a less-restrictive placement than the Veterans Home and to be treated on an outpatient basis. "It is not only the customary procedure, but the constitutionally and statutorily mandated requirement, to treat even seriously mentally impaired persons in the least restrictive environment medically possible." *In re E.H.*, No. 02-1786, 2003 WL 22190913, at *9 (Iowa Ct. App. Sept. 24, 2003) (citation omitted); *see* Iowa Admin. Code r. 441-29.5(3)(a).

R.B. is at a "residential level of care" at the Veterans Home. This is "a fairly low level of care where he is free to go to stores or restaurants, whatever. He's not under lock and key. He just has a certain degree of structure and supervision so that he has assistance available if he needs it." R.B. has to notify staff where he is going and needs permission if he plans to stay elsewhere overnight. The VA psychiatrist opined if R.B. were to leave the facility, any caregiver would need to be able to provide "pretty much around-the-clock supervision" not only to monitor R.B.'s sobriety and medication, but also to be available in case complications developed on an outing.

R.B. suggested a friend he could live with in Waterloo. According to R.B., they had agreed on rent, and she would help with his transportation. He planned on going to fast food restaurants for his meals. A mental-health advocate contacted R.B.'s suggested landlady but was unable to finish the conversation after the phone cut off. The friend did not return or finish the phone call and has not contacted the Veterans Home to make arrangements for her home to be checked or to arrange for R.B. to move in.

R.B. has done well in his structured placement, where he has freedom in the community, his basic needs provided for, his medications tracked, and resources available at all times.  There is no evidence his suggested placement has the ability to provide any level of supervision or ensure R.B. complies with his medication treatment.  Based on these facts, the Iowa Veterans Home is the least restrictive placement appropriate for R.B.  We conclude clear and convincing evidence supports the district court's order.

**AFFIRMED.**